IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ROSE CARE, INC.                                                    PLAINTIFF

v.                         CASE NO. 06-5076

GODWIN GRUBER, LLP and
G. MICHAEL STEWART                                                 DEFENDANTS

<u>**MEMORANDUM OPINION & ORDER**</u>

On March 30, 2006, this case was filed by Rose Care, Inc. ("Rose Care") in the Circuit Court of Benton County, Arkansas. On May 1, 2006, the Defendants filed a Notice of Removal. The Complaint alleges negligence, breach of contract, and breach of fiduciary duty with regard to Defendants legal representation of Rose Care. The Defendants filed a Motion to Dismiss or Partial Summary Judgment and Brief in Support (Docs. 29 & 30) as to Rose Care's negligence and breach of fiduciary duty claims. For the reasons set forth herein, the Defendants' Motion is **DENIED**.[1] Defendants also filed a Motion to Strike and Objections to Rose Care's Summary Judgment Evidence (Docs. 43 & 44). That motion is denied and the objections overruled.[2]

**Standard of Review.**

In ruling on a motion to dismiss, the district court must

---

[1]     The Court will rule on the Defendants' Motion as a motion to dismiss. Plaintiff has indicated to the Court it has not taken any depositions at this time and pursuant to the Court's Final Scheduling Order three months remained for discovery at the filing of Defendants' motion.

[2]     Defendants contend that certain affidavit testimony submitted by Plaintiff was not proper for summary judgment review. Because the Court has ruled on the pleadings as a motion to dismiss only, the Defendants motion is denied.

accept the allegations contained in the complaint as true, and all reasonable inferences from the complaint must be drawn in favor of the non-moving party. *Hafley v. Lohman,* 90 F.3d 264, 266 (8th Cir. 1996). Complaints should be liberally construed in the plaintiff's favor and should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief." *Rucci v. City of Pacific,* 327 F.3d 651, 652 (8th Cir. 2003) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)).

**Background.**

Rose Care is a corporation engaged in the business of operating nursing homes in Arkansas. In 2003, Rose Care faced several lawsuits and hired Defendants G. Michael Stewart ("Stewart") and Godwin Gruber, LLP ("Gruber") to represent Rose Care in pending litigation. Rose Care has now sued the Defendants for legal malpractice, breach of fiduciary duty, and breach of contract in connection with Defendants' representation of Rose Care in the case of: *Helen Ross, Special Administratrix of the Estate of Eula Givens, Deceased v. Rose Care, Inc.*, Saline County Circuit Case No. CIV01-549-3 ("*Givens*").

In *Givens*, the plaintiff sued Rose Care for medical malpractice, negligence, violations of the Arkansas Long Term Care Residents' Rights Law, and wrongful death in connection

-2-

with the death of Eula Givens.  In preparation of the representation of Rose Care in the *Givens* trial, Stewart spent approximately two weeks in Little Rock observing the trial of another case against Rose Care.  During this time, Stewart spent extra time with Michele Rose, Rose Care's corporate representative.  Rose Care alleges that Stewart used this time to take advantage of Michele Rose, who it alleges was in a vulnerable position because of the personal stress and other problems caused by several pending lawsuits.  Rose Care alleges Stewart made inappropriate statements to Michele Rose and engaged in inappropriate conduct with her while he represented Rose Care in the *Givens* case.

In the *Givens* trial, it was alleged that Rose Care had been cited for several administrative violations and provided poor treatment of Givens.  The jury returned a verdict for the plaintiff of $1,600,000 in compensatory damages.  Rose Care, still represented by the Defendants, appealed the verdict to the Arkansas Court of Appeals, and also challenged the trial court's admission into evidence of a 1999 nursing home survey conducted by the Arkansas Office of Long Term care ("OLTC survey").  Rose Care argues the company would have paid only $300,000 in damages if the case had settled as Rose Care requested.  Rose Care claims it was the insistence of Stewart that caused the case to proceed to trial which resulted in increased costs to Rose Care.

In the Spring of 2005, while the case was on appeal, Stewart initiated settlement discussions. Rose Care contends Stewart began settlement pursuit only because of the demands from Michele Rose and Rose Care's insurance representatives. On May 12, 2005, Rose Care contends the *Givens* plaintiffs agreed to conclude the case for $1,000,000, which it was willing to pay. However, the Defendants contend Rose Care was pursuing a global settlement of a group of cases being prosecuted by the same plaintiff's attorney. According to Defendants, the settlement agreement had not been finalized by June 1, 2005—the date the Arkansas Court of Appeals issued its opinion in *Givens*—and therefore neither party to the *Givens* appeal notified the Court of Appeals of a settlement. Rose Care contends that a settlement had been reached and Stewart was ethically and legally obligated to inform the Arkansas Court of Appeals of the settlement.

Rose Care contends Stewart also failed to disclose the settlement to the attorney hired by Rose Care to represent it in the appeal. Plaintiff contends Stewart misled this attorney by stating the case was not settled because the terms were not final, but that this was after Stewart sent the *Givens*' plaintiff's counsel $1,000,000 in settlement checks.[3]

---

[3]     See the letter from G. Michael Stewart on Godwin Gruber letterhead, to Brian Reddick, plaintiff's attorney for the estate of Eula Givens (May 17, 2005) (enclosing two checks of $500,000 each to settle the *Givens* case).

Defendants contend that Michele Rose was asked via e-mail whether she wanted to "shut down" the appeals process or wait for the result, and contend they complied with her answer: "whatever." (See Ex. F at 1).

On June 1, 2005, the Arkansas Court of Appeals issued its decision in favor of the plaintiffs on all issues. Defendants contend existing Arkansas law was applied and no new law was created, but Rose Care argues the decision was detrimental to future litigation against Rose Care. Prior to *Givens*, the plaintiffs against Rose Care had to prove the specific OLTC survey either named the plaintiff in the survey, or was conducted while that plaintiff was a resident of that specific nursing home. Rose Care contends that, after *Givens*, OLTC surveys were difficult to keep out of evidence because the Arkansas Court of Appeals ruled the surveys could be considered as to the defendant [Rose Care] regardless of when the study took place.[4]

Plaintiff contends the Arkansas Court of Appeals also ruled the jury should have been allowed to hear arguments on punitive damages at the trial and because of that ruling, Rose Care will be forced to expend more money to defend punitive damages issues and be under greater pressure to settle future cases.

The plaintiff's attorney opposing Rose Care in the *Givens*

---

[4]     *Givens*, 91 Ark. App. at 208, 209 S.W. 3d at 406.

case, had five other cases pending against Rose Care when the Arkansas Court of Appeals issued its opinion. Rose Care contends that in the Spring of 2005, plaintiff's suggested settlement amounts for the six pending cases, totaled $1.9 million. Rose Care contends in May 2005, Stewart wrote Michele Rose assuring her those numbers were starting figures for negotiating purposes and the final total would be much lower.[5] After the *Givens* opinion was issued, the attorney for plaintiffs in the six pending cases insisted those figures were "firm offer" numbers and were non-negotiable. Rose Care further contends the additional cases settled for amounts higher than estimated prior to the *Givens* opinion.

Rose Care contends the actions and inactions of Defendants damaged it both strategically and financially, and Defendants thereby committed legal malpractice. Defendants contend there was no harm to Rose Care in the global settlement prior to the issuance of the *Givens* opinion as they were for the same amount originally offered by the *Givens* plaintiffs, and no increase in costs occurred.

**Analysis.**

The Defendants argue Rose Care's negligence and breach of fiduciary duty claims based on Defendants' representation of

---

[5]     See the email from Michael Stewart to Michele Rose (May 4, 2005)(estimating the six cases would be settled for approximately $800,000.  (Ex. C, App. 17)

Rose Care during the *Givens* case should be dismissed for failure to state a claim under Fed. Rules of Civ. Proc. ("F.R.C.P.") 12(b)(6).  Defendants contend Rose Care's claims will fail on the issues of proximate cause and damages.  To prove damages and proximate cause, the plaintiff must show that, but for the alleged negligence of the attorney, the result in the underlying action would have been different.  *Barnes v. Everett*, 95 S.W.3d 740 (Ark. 2003).

Rose Care has demonstrated facts sufficient to state a claim in the underlying *Givens* causes of action.  Rose Care contends it expressed a desire to settle the *Givens* case prior to the appeal but was discouraged by Stewart, and that thereafter Stewart did not provide the Arkansas Court of Appeals notice of the settlement.  Rose Care contends Stewart was on notice of the potential risk of allowing a ruling on the settled case as evinced by the email from Jess Askew.[6]  Rose care alleged an increase of $700,000 in costs to conclude the *Givens* case because Stewart did not allow Rose Care to accept an offer for $300,000, and $1 million was eventually required to conclude the case.

Rose Care contends it can no longer be as successful in preventing the issue of punitive damages from reaching the jury

---

[6]   E-mail from Jess Askew, appellate attorney for Rose Case in the *Givens* case, to Michael Stewart (May 26, 2005)(Ex. P).

-7-

in future cases because of the *Givens* opinion, and the Arkansas Civil Justice Reform Act will not shield Rose Care from the punitive damages ruling in the *Givens* opinion as Defendants contend.  Construing the facts from the briefs of the parties in favor of Rose Care, the non-moving party, the Court can only conclude Rose Care has met its burden to survive a motion to dismiss.

Defendants contend Rose Care's claim of negligence and breach of fiduciary duty claims based on the alleged intimate relationship between Stewart and Michele Rose should be dismissed for failure to state a claim under F.R.C.P. 12(b)(6) because Rose Care failed to establish facts sufficient to support such a claim.  Rose Care has again demonstrated facts sufficient to state a claim as to the alleged inappropriate relationship of Stewart and Michele Rose.  Defendants claim Rose Care lacks standing, has no basis for such a claim, and can not demonstrate proximate causation.

Intentional misconduct is not required for an attorney to violate the Rules of Professional Conduct, rather gross negligence in handling a client's matter is sufficient for a violation of the rules.  *Fink v. Neal*, 945 S.W.2d 916 (Ark. 1997).  Defendants contend because Michele Rose was only the corporate representative for Rose Care, and Rose Care, Inc. was the actual client, that Stewart and Michele Rose did not enjoy

an attorney-client relationship, and therefore no inappropriate conduct could have occurred.

Rose Care contends Stewart was involved with someone so close to the case that it had to affect fair representation. Rose Care contends the negative effect was improper persuasion over Michele Rose and an unnatural influence over her decision-making for Rose Care which exposed Rose Care to increased damages.  Rose Care indicates it will call an expert witness who will offer testimony regarding how Stewart breached the standard of care and the duties of an ordinarily careful and prudent attorney.[7]  Rose Care has sufficiently demonstrated its prima facie case for legal malpractice and Defendants motion to dismiss is denied on this point as well.

**Conclusion.**

For the reasons set forth herein, the Defendants Motion to Dismiss is **DENIED.**  IT IS SO ORDERED this 12th day of April, 2007.

_/s/ Robert T. Dawson_
ROBERT T. DAWSON
UNITED STATES DISTRICT JUDGE

---

[7]     *See* Plaintiff's Initial Disclosure (listing Dent Gitchell as an expert witness for the Plaintiff. Professor Gitchell is a University of Arkansas Law Professor and expert on the law of legal and professional ethics).